MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC., Plaintiff,

v.

**Arnold NUDELL, Defendant.**

**No. CIV.A. 02–N–942(BNB).**

United States District Court, D. Colorado.

Jan. 13, 2003.

Peter A. Jaffe, Peter A. Jaffe, McCoy, CO, for Plaintiff.

Michael Raymond Dunlevie, Michael R. Dunlevie, Edwards, CO, for Defendant.

## ORDER

BOLAND, United States Magistrate Judge.

This matter is before me on the Defendant's Verified Motion to Disqualify Peter A. Jaffe As Counsel for Plaintiff (the "Motion to Disqualify"), filed November 4, 2002. Specifically, the defendant seeks to disqualify Peter A. Jaffe from all further representation of the plaintiff, both pretrial and at trial. The motion is fully briefed, and I held a hearing on the motion on January 6, 2003. At that hearing, the parties were afforded the opportunity to put on evidence, but neither chose to do so.

For the reasons stated below, the Motion to Disqualify is GRANTED IN PART and DENIED IN PART.

### I.

As the moving party, the defendant has the burden to establish grounds for the disqualification of Mr. Jaffe. *Religious Technology Center v. F.A.C.T. Net, Inc.,* 945 F.Supp. 1470, 1473 (D.Colo.1996). When ruling on a motion to disqualify counsel, I must make specific findings and conclusions. *Fullmer v. Harper,* 517 F.2d 20, 21–22 (10th Cir.1975). However, the use of these findings is restricted to the decision of this motion only, and the parties are not bound by these factual findings for any other purpose in the course of this litigation. *Religious Technology,* 945 F.Supp. at 1473; *World Youth Day, Inc. v. Famous Artists Merchandising Exchange, Inc.,* 866 F.Supp. 1297, 1299 (D.Colo.1994).

### II.

Merrill Lynch made two loans to a company called Genesis Technology, Inc. ("GTI"), totaling $600,000. Complaint, ¶¶ 6, 10–12. The defendant here, Arnold Nudell, personally guaranteed the repayment of the GTI loans. *Id.* at ¶ 13. This suit is an action by Merrill Lynch to recover under the personal guaranty, and the prayer for relief seeks judgment in the amount of not less than $591,185.15. *Id.* at p. 7.

In November 2001, GTI filed a Chapter 7 bankruptcy. Plaintiff's Motion for Summary Judgment, ¶ 2. In the course of the bankruptcy, Merrill Lynch took possession of certain collateral securing the repayment of its loans to GTI and sold that collateral to a third party. The specific terms of the sale of the collateral are not before me.

Mr. Nudell has established through the undisputed Affidavit of Michael R. Dunlevie (the "Dunlevie Aff."), attached to the Motion to Disqualify, the following:

... Plaintiff took possession of the Secured Collateral (from Genesis) through bankruptcy procedures. The Secured Collateral was stored in several storage facilities, public storage facilities, some in Colorado....

\*       \*       \*       \*       \*       \*

Mr. Kocolowski [the Merrill Lynch representative responsible for the GTI loans] did nothing regarding the Secured Collateral in [Merrill Lynch's] possession. He stated that all was done for Plaintiff was done by Mr. Jaffe. Mr. Kocolowski did nothing with regard to the Secured Collateral from Plaintiff's possession through the sale of the Secured Collateral, other than being aware it was in storage.

Mr. Kocolowski stated he had no communication with the storage facilities

holding the Secured Collateral, rather all communications were through Mr. Jaffe as the sole person in contact with those storage facilities.

\* \* \* \* \* \*

Mr. Kocolowski stated that Mr. Jaffe's office was the sole contact with the buyer of the Secured Collateral until he signed the sale document. The sale document was prepared by Mr. Jaffe. Mr. Jaffe was the sole contact with the buyer of the Secured Collateral from possession through the sale on June 29, 2002.

\* \* \* \* \* \*

Nudell has received the correspondence of Richard M. Evancho of Eagle Outside Storage, stating he called ... Attorney Peter A. Jaffee [sic] twice and left messages on his recorder, but did not receive a return call, so he proceeded with the disposal of the storage unit contents several weeks later under proper Colorado state procedures including advertising of disposal and again personally calling parties.

Dunlevie Aff., ¶¶ 3, 5–6, 8 and 11 (internal citations omitted).

Although the Motion to Disqualify and supporting Dunlevie Affidavit are not models of clarity, I understand the sequence of events to be that after GTI's bankruptcy filing, the collateral was placed in storage in several commercial storage facilities. Mr. Jaffe alone communicated with those storage facilities. One of those facilities, Eagle Outside Storage, attempted unsuccessfully to contact Mr. Jaffe about past due storage fees. Eventually, Eagle Outside Storage sold the contents of the storage unit, including presumably some of the GTI collateral securing repayment of the Merrill Lynch loans, to recover its unpaid storage fees.

Mr. Nudell has raised as a defense to the suit on his guaranty Merrill Lynch's "failure to safe keep the Secured Collater-

al of GTI Plaintiff obtained...." Preliminary Pretrial Order, Part 3.

Mr. Nudell's guaranty of the GTI loans states that it is governed by Illinois law. Complaint at Exh. H, p. 2. Illinois has adopted § 9–610 of the Uniform Commercial Code, which provides:

(a) Disposition after default. After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.

(b) Commercially reasonable disposition. Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable.

810 Ill. Comp. Stat. 5/9–610(a)–(b).

In disposing of the collateral securing the GTI loans, Merrill Lynch was required to act in a commercially reasonable manner. *Id.* In order to be entitled to pursue a deficiency against Mr. Nudell, Merrill Lynch must show that the value of the collateral was less than the indebtedness and that its sale of the collateral was reasonable. *Munao v. Lagattuta,* 294 Ill. App.3d 976, 229 Ill.Dec. 345, 691 N.E.2d 818, 823 (1998).

Conversely, a creditor's improper disposition of the collateral gives rise to a rebuttable presumption that the collateral was equal in value to the debt. *Id.* Thus, any failure by Merrill Lynch to act commercially reasonably in connection with the disposition of the collateral may constitute a defense, in whole or in part, to the suit against Mr. Nudell on his guaranty.

### III.

A motion to disqualify counsel is adressed to the sound discretion of the district court. *World Youth Day,* 866 F.Supp. at 1301. Insofar as is relevant

here, this court applies the rules of professional conduct as adopted by the Colorado Supreme Court[1] as the standard of professional responsibility for lawyers practicing before it. D.C.COLO.LCivR 83.4. Mr. Nudell's motion rests on Colorado Rule of Professional Conduct 3.7, which provides in relevant part:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

The comments to Rule 3.7 make clear its purpose:

Combining the roles of advocate and witness can involve a conflict of interest between the lawyer and client and can prejudice the opposing party. If a lawyer is both counsel and witness, the lawyer becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his or her own credibility.

The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on the evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

A lawyer is likely to be a necessary witness where the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere. *World Youth Day*, 866 F.Supp. at 1302. Applying the test here, I conclude that Mr. Nudell has met his burden of proof to disqualify Mr. Jaffe as trial counsel.

■ Whether Merrill Lynch acted in a commercially reasonable manner in its disposition of the collateral is an important issue in this case and may constitute Mr. Nudell's principal defense. Some of that collateral may have been sold by a storage company while under the control of Merrill Lynch due to Merrill Lynch's failure to pay storage fees. Mr. Nudell argues that a lender that wastes the collateral has not been commercially reasonable in its disposition of that collateral. Mr. Jaffe is the only witness who can testify about important issues surrounding the storage of the collateral; dealings with the storage company, and particularly the payment of storage fees; and sale of the collateral. Indeed, Mr. Nudell argues that it was through Mr. Jaffe's actions (or inactions) that the collateral at the Eagle Outside Storage facility was lost or wasted. These facts are relevant and material to the issues in this case; Mr. Jaffe's testimony on these matters would not be merely cumulative; and Mr. Jaffe is the only witness with personal knowledge of some of the facts. He certainly is a necessary witness.

Merrill Lynch argues that the Motion to Disqualify should be denied as premature because "defendant has not asserted by counterclaim or defense any claim that it suffered any damage due to an alleged loss

---

1. This court has excepted from its application certain rules of conduct adopted by the Colorado Supreme Court concerning the "unbundling of legal services." D.C.COLO.LCivR 83.4.

and sale of the Secured Collateral." Plaintiff's Opposition to Motion to Disqualify, ¶ 6. To the contrary, the issue of whether Merrill Lynch acted commercially reasonably in its handling of the collateral clearly is an issue in the case by virtue of the defense asserted in the Preliminary Pretrial Order.

Merrill Lynch also argues that the Motion to Disqualify should be denied because Mr. Jaffe "is not a necessary witness and disqualification would work a substantial hardship on plaintiff." Id. at ¶ 9. Mr. Jaffe certainly is a necessary witness, and I have been presented with no evidence concerning hardship to Merrill Lynch.

The mere violation of a disciplinary rule does not automatically require disqualification. *World Youth Day,* 866 F.Supp. at 1303. Instead, the critical inquiry is whether the litigation can be conducted in fairness to all parties. *Id.* Disqualification should be ordered only where the claimed violation in some way "taints" the trial or the legal system. *Id.* A violation of rule 3.7(a) ordinarily will require disqualification, however, because the very purpose of the rule is to avoid the taint to a trial that results from jury confusion when a lawyer acts as both witness and advocate. This is such a case. There is a substantial risk that the jury will be confused by Mr. Jaffe acting both as a witness on important issues (where he also was the principal actor on behalf of Merrill Lynch) and as advocate. The jury may attribute too much or too little weight to Mr. Jaffe's testimony because of his dual role. In any event, Mr. Jaffe's dual role will taint the trial and give one party or the other an unfair advantage.

█ Rule 3.7(a) is a prohibition only against acting as an "advocate at trial." Its purpose is to avoid jury confusion at trial. It does not automatically require that a lawyer be disqualified from pretrial activities, such as participating in strategy sessions, pretrial hearings, settlement conferences, or motions practice. *World Youth Day,* 866 F.Supp. at 1303; *Main Events Productions, LLC v. Lacy,* 220 F.Supp.2d 353, 356 (D.N.J.2002). Disqualification from pretrial matters may be appropriate, however, where that activity "includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role." *World Youth Day,* 866 F.Supp. at 1303.

In this case, discovery closed on December 30, 2002. Consequently, it is not necessary to disqualify Mr. Jaffe from taking depositions, as was required in the *World Youth Day* case. *Id.* at 1304 ("Realistically, the testimony from oral depositions in this case cannot easily be taken and read into evidence without revealing [the lawyer's] identity as the deposing attorney").

Finally, I find that Mr. Nudell is not misusing Rule 3.7 for a tactical advantage.

### IV.

IT IS ORDERED that the Motion to Disqualify is GRANTED IN PART. Peter A. Jaffe is disqualified from acting as trial counsel for Merrill Lynch. The Motion to Disqualify is DENIED insofar as it seeks to disqualify Mr. Jaffe from acting as counsel for Merrill Lynch in pretrial matters including participation in strategy sessions, pretrial hearings, settlement conferences, and motions practice. Mr. Jaffe's continued pretrial involvement, of course, cannot be used later as a basis for urging that the enforcement of this order at the time of trial works an undue hardship on Merrill Lynch.

IT IS FURTHER ORDERED that the defendant is granted leave to depose Mr. Jaffe. Discovery is reopened for the sole purpose of allowing the deposition of Mr. Jaffe, which shall be completed on or before January 24, 2003.

IT IS FURTHER ORDERED that the defendant's request for costs and attorney's fees in bringing the Motion to Disqualify is DENIED.