Filed 10/5/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JANE CL DOE, | B299856 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC723608) |
| v. | |
| CHARLES KWANGSOO YIM, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of
Los Angeles County, Mark C. Kim, Judge. Affirmed.
Tiffanie K. Lee for Plaintiff and Appellant.
Eugene V. Zech for Defendant and Respondent.

# INTRODUCTION

Roughly eight months after attorney Tiffanie Lee and respondent Charles Kwangsoo Yim ended their 17-year marriage, Lee represented her adult daughter, appellant Jane CL Doe, in filing this action against Yim. Appellant alleged Yim sexually abused her throughout a four-year period early in his marriage to Lee, when appellant was a minor. She sought damages on several tort theories of liability, including a breach of Yim's alleged fiduciary duty to appellant as a stepparent and caregiver. Yim denied all allegations and raised an affirmative defense that he had no fiduciary duty to appellant.

Yim promptly moved to disqualify Lee as counsel under the advocate-witness rule, arguing that she would be a key witness in the parties' dispute concerning whether he had exploited his marriage with Lee to sexually abuse her daughter and that, regardless of whether appellant had consented to Lee's representation, Lee's dual role as advocate and witness would prejudice Yim and the integrity of the judicial process. In opposition, appellant argued the advocate-witness rule did not prohibit Lee from representing her at any stage of the litigation, both because the rule is inapplicable to pretrial activities, and because appellant had provided informed written consent to Lee's dual role at trial.

Following a hearing, the trial court granted the motion to disqualify Lee from representing appellant in all phases of litigation, relying primarily on the advocate-witness rule. In disqualifying Lee from representing appellant even in

pretrial activities, the court relied on a finding that Lee's potential misuse of confidential information obtained through her 17-year marriage with Yim would prejudice Yim and the integrity of the judicial process.

On appeal, appellant contends the trial court abused its discretion in disqualifying Lee as her counsel because: (1) the advocate-witness rule does not apply to pretrial activities, and the court failed to make sufficient findings regarding the parties' competing interests to warrant Lee's disqualification at trial in the face of appellant's consent to Lee's dual role; and (2) no substantial evidence supported the court's finding that Lee had acquired confidential information through her marriage to Yim that she could use to appellant's advantage.

Finding no error, we affirm. As discussed below, the court reasonably concluded that Lee is nearly certain to be a key witness at trial. Therefore, to effectuate the advocate-witness rule's purpose of avoiding factfinder confusion, the court acted within its discretion in applying the rule to disqualify Lee not only at trial, but also in (1) depositions; and (2) pretrial evidentiary hearings at which Lee is likely to testify. The court also acted within its discretion in disqualifying Lee from representing appellant in all other phases of the litigation on the ground of Lee's potential misuse of confidential information obtained through her 17-year marriage with Yim.

## PROCEEDINGS BELOW

### A. *The Pleadings*

On October 1, 2018, appellant -- represented by Lee -- filed this action against Yim. The complaint alleged Yim sexually abused appellant from 2002 to 2006 (when she was nine to 13 years old), both in his car and in the home he shared with appellant's mother, to whom he was married at the time. It further alleged that Yim represented himself to appellant and the public as appellant's stepfather, giving rise to a fiduciary relationship, and that his sexual abuse breached a fiduciary duty to appellant "as a parent and as a caregiver." Relatedly, it alleged, "In fear of potentially breaking up her new family if she were to tell anyone about what [Yim] did to her, [appellant] tried to maintain her silence throughout all these years, agonizing over the incidents and . . . carrying that permanent scar into her adulthood." Appellant asserted seven tort causes of action, including two -- breach of fiduciary duty and negligent infliction of emotional distress -- premised on Yim's alleged fiduciary duty to appellant. She sought damages, including emotional distress damages, special damages for the costs of medical and psychological care, and punitive damages.

Yim filed an answer denying all allegations. Among other affirmative defenses, he asserted that appellant failed to mitigate damages and that he had no fiduciary relationship with appellant.

4

**B.** *The Motion to Disqualify Lee*

Less than two months after the complaint was filed, Yim moved to disqualify Lee as appellant's counsel. Yim declared that Lee was appellant's mother and his ex-wife, to whom he had been married from May 27, 2000, to January 28, 2018 (encompassing the entire four-year period of alleged abuse).[1] Arguing that Lee's relationships with the parties made clear that she was a "crucial" witness, he moved to disqualify Lee on the ground that her dual role as counsel and witness would violate the advocate-witness rule. (See Rules Prof. Conduct, rule 3.7(a) ["A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: [¶] (1) the lawyer's testimony relates to an uncontested issue or matter; [¶] (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or [¶] (3) the lawyer has obtained informed written consent from the client" (fn. omitted)].) He argued that even if appellant had provided informed consent to Lee's representation, Lee should be disqualified because her dual role would prejudice Yim and the integrity of the judicial process by, inter alia: (1) confusing the jury, particularly with respect to any argument Lee made as counsel regarding

---

[1] In her complaint, appellant alleged that Lee and Yim's marriage was void on the ground that when they married, Yim was already married to another woman. The record includes no evidence supporting this allegation or otherwise challenging Yim's declaration that he and Lee were married from May 27, 2000, to January 28, 2018.

her own testimony as a witness; and (2) creating a conflict between Lee's duty as a witness to tell the truth, even where the truth might harm appellant's interests, and Lee's duty as counsel to advocate for appellant's interests.

In an opposition filed by Lee, appellant argued the advocate-witness rule was inapplicable because she had provided Lee with informed written consent to Lee's trial representation even if Lee were to be called as a witness (as Lee asserted in a concurrently filed declaration). Appellant further argued that the advocate-witness rule did not bar Lee from representing appellant in pretrial activities, as the rule speaks only of trial. She asserted that Lee's "mere relationship" to Yim as his ex-wife did not warrant disqualification, and argued that Yim's predictions of prejudice from Lee's dual role were speculative. In the course of the latter argument, she objected to Yim's implication that Lee's duty to advocate for her client might influence her to testify untruthfully, surmising, "Perhaps [Yim] is so used to lying that he naturally projects his habitual tendencies to others as well."

In a reply brief, Yim argued the court should require appellant to confirm her informed consent to Lee's dual role in a declaration of her own, asserting appellant was "being manipulated by her mother to make false allegations against [Yim] as part of Ms. Lee's vindictive course of conduct following the parties' acrimonious divorce." He again argued that, in any event, appellant's consent could not cure the anticipated prejudice to him and the integrity of the judicial

6

process.  He argued Lee should be disqualified from representing appellant not only at trial but also in all pretrial activities, predicting that she would otherwise "attempt to avail herself of ABA's Rule 3.7 hardship exception to avoid disqualification at the time of trial as well, arguing that it is too late for another attorney to get up to speed at that point in the litigation."  (See ABA Model Rules Prof. Conduct, rule 3.7(a) ["A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:  [¶] . . . [¶] . . . [¶] disqualification of the lawyer would work substantial hardship on the client"].)

### C. *The Trial Court's Ruling*

After a hearing, during which Lee proposed to withdraw from the case at the time of trial, the trial court issued a written order granting Yim's motion to disqualify Lee from representing appellant in "all phases of this litigation."  Accepting Lee's undisputed evidence that she had obtained appellant's informed consent to her dual role, the court nevertheless found the informed-consent exception to the advocate-witness rule inapplicable, explaining, "[I]t is not [appellant] who would suffer prejudice if Lee acts as both advocate and witness.  [Yim]'s interest in the integrity [of] the judicial process is also at issue."  Noting the "near certainty" that Lee would be a witness at trial, the court found Lee's continued representation "would undermine the integrity of the judicial process," explaining, "Lee has

acquired information about [appellant and Yim] as a mother and ex-wife and lacks professional distance. Allowing her to act as advocate for [appellant] would constitute a violation of Rule 5-210[2] and would also confuse the jury as to Lee's role in the action." It expressly rejected Lee's argument that her disqualification should be limited to trial, explaining, "Lee would not only have a conflict if called as a witness, she has percipient knowledge which would give her an unfair advantage against [Yim,] with whom she had a confidential relationship." It elaborated, "The court strongly disagrees with Lee that the 'mere relationship' as an ex-wife is insufficient to support disqualification. The term 'mere' is a serious understatement -- a spousal relationship enjoys special privileges because it is one of the most substantial of human relationships while it exists. [¶] The claim of prejudice is not, as Lee puts it, speculative; it is palpable. Lee has special knowledge of facts which can be exploited at deposition or trial. [¶] . . . [¶] . . . Retaining co-counsel does not solve the problem -- Lee could still . . . direct the litigation and could use another attorney as a 'mouthpiece' for her own tactical decisions."

Appellant filed objections to the court's statement of decision on the ground that the court had neither stated

---

2    "Former Rule 5-210 has been superseded by Rule 3.7 [citations]." (1 Witkin, Cal. Proc. (5th ed. 2020) Attorneys, § 462.) Appellant does not challenge the trial court's analysis on the basis of its reference to the former version of the advocate-witness rule.

"factual findings to support or justify its decision" nor addressed Lee's proposal to withdraw at the time of trial. The court overruled the objections, stating, "1. The court has stated all facts necessary to support its decision. [¶] 2. The court need not address 'offers' to withdraw at a later time. The court found that Tiffanie Lee was disqualified for all phases of this litigation."

Appellant timely appealed.

## DISCUSSION

Appellant contends the trial court abused its discretion in disqualifying Lee as her counsel because: (1) the advocate-witness rule does not apply to pretrial activities, and the court failed to make sufficient findings regarding the parties' competing interests to warrant Lee's disqualification at trial in the face of appellant's consent to Lee's dual role; and (2) no substantial evidence supported the court's finding that Lee had acquired confidential information through her marriage to Yim that she could use to appellant's advantage.

### A. *Disqualification Principles*

A trial court's authority to disqualify an attorney derives from its inherent power, codified at Code of Civil Procedure section 128, subdivision (a)(5), to control the conduct of its ministerial officers and of all other persons connected with its proceedings in furtherance of justice. (*Jarvis v. Jarvis* (2019) 33 Cal.App.5th 113, 129 (*Jarvis*).) Disqualification may be ordered as a prophylactic measure

9

against a prospective ethical violation likely to have a substantial continuing effect on future proceedings. (*City of San Diego v. Superior Court* (2018) 30 Cal.App.5th 457, 462, 471-472; but see *In re Jasmine S.* (2007) 153 Cal.App.4th 835, 843 ["'an appearance of impropriety by itself does not support a lawyer's disqualification'"].)

"'Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion.'" (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.) Under this standard, the trial court's legal conclusions are reviewed de novo, but its factual findings are reviewed only for the existence of substantial evidence supporting them, and its "'application of the law to the facts is reversible only if arbitrary and capricious.'" (*Ibid.*)

### B. *The Advocate-Witness Rule*

Appellant contends the trial court abused its discretion in applying the advocate-witness rule to disqualify Lee as her counsel, arguing that the rule does not apply to pretrial activities, and that the court failed to make sufficient findings to warrant Lee's disqualification at trial in the face of appellant's consent to Lee's dual role.

### 1. *Principles*

"The 'advocate-witness rule,' which prohibits an attorney from acting both as an advocate and a witness in the same proceeding, has long been a tenet of ethics in the American legal system, and traces its roots back to Roman

Law." (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1208 (*Kennedy*).) California's current version of the advocate-witness rule provides, "A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: [¶] (1) the lawyer's testimony relates to an uncontested issue or matter; [¶] (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or [¶] (3) the lawyer has obtained informed written consent from the client." (Rules Prof. Conduct, rule 3.7(a), fn. omitted.) A comment to the rule clarifies that the informed-consent exception is not absolute: "Notwithstanding a client's informed written consent, courts retain discretion to take action, up to and including disqualification of a lawyer who seeks to both testify and serve as an advocate, to protect the trier of fact from being misled or the opposing party from being prejudiced." (*Id.*, com. 3, asterisk omitted, citing *Lyle v. Superior Court* (1981) 122 Cal.App.3d 470 (*Lyle*).) In other words, a court retains discretion to disqualify a likely advocate-witness as counsel, notwithstanding client consent, where there is "a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process." (*Lyle, supra*, at 482.)

Neither California's advocate-witness rule nor its official comments specify how an advocate-witness's dual role might mislead the trier of fact or prejudice the opposing party. However, this topic is addressed in an official comment to the rule's national counterpart, rule 3.7 of the ABA Model Rules of Professional Conduct, addressing why

11

the opposing party or the tribunal may have "proper objection" to the dual role: "A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." (ABA Model Rules Prof. Conduct, rule 3.7, com. 2.)[3] California courts have agreed that one purpose of the advocate-witness rule is to prevent factfinder confusion regarding whether an advocate-witness's statement is to be considered proof or argument. (See, e.g., *People v. Donaldson* (2001) 93 Cal.App.4th 916, 928-929 (*Donaldson*) [quoting from foregoing comment]; *People ex rel. Younger v. Superior Court* (1978) 86 Cal.App.3d 180, 196 (*Younger*) ["the jury may have difficulty keeping properly segregated the arguments of the attorney acting as advocate and his testimony as a witness"].) They have identified another, related purpose of avoiding the risk of "the jurors' tying [counsel's] persuasiveness as an advocate to his credibility as a witness . . . ." (*Younger*, *supra*, at 196; see also *Donaldson*, *supra*, at 928 ["'The very fact of a lawyer taking on both roles

_____

[3] "'[E]specially where there is no conflict with the public policy of California, the [ABA] Model Rules serve as a collateral source for guidance on proper professional conduct in California.'" (*Kennedy*, *supra*, 201 Cal.App.4th at 1210; see also Rules Prof. Conduct, rule 1.0, com. 4 ["for guidance on proper professional conduct . . . rules and standards promulgated by other jurisdictions and bar associations may also be considered"].)

will affect the way in which a jury evaluates the lawyer's testimony, the lawyer's advocacy, and the fairness of the proceedings themselves'"]; Tuft et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2019) ¶ 8:378 [detriment to opposing party or judicial integrity "may be claimed where the attorney's testimony is on the *key issue* in the case on which there is conflicting testimony, and the attorney then proposes to argue to the jury why his or her testimony is more credible than the conflicting evidence" ].)

The advocate-witness rule does not expressly address pretrial representation.  (Rules Prof. Conduct, rule 3.7(a) [absent specified exception, "A lawyer shall not act as an advocate *in a trial* in which the lawyer is likely to be a witness" (italics added)]; see also ABA Model Rules Prof. Conduct, rule 3.7(a) [absent specified exception, "A lawyer shall not act as advocate *at a trial* in which the lawyer is likely to be a necessary witness" (italics added)]. Nevertheless, to effectuate the rule's purpose of avoiding factfinder confusion, we interpret the rule's use of the term "trial" to encompass a pretrial evidentiary hearing at which counsel is likely to testify.  (See *Younger*, *supra*, 86 Cal.App.3d at 192-193 [concluding, in dicta, that prosecutor violated California's then-current version of advocate-witness rule, notwithstanding rule's limitation to "trial," by both testifying and arguing about photographic identification procedures during pretrial hearing; "the word 'trial' is broad enough to include a pretrial hearing at which the testimony of witnesses is taken and a contested fact

13

issue is litigated"].) Further, though the parties cite no California authority on point, and we have found none, "most courts recognize that an attorney who intends to testify at trial may not participate in 'any pretrial activities which carry the risk of revealing the attorney's dual role to the jury.' [Citation.] In particular, a testifying attorney should not take or defend depositions." (*Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis* (S.D. Ohio 2015) 253 F.Supp.3d 997, 1018-1019; see also, e.g., *LaFond Family Trust v. Allstate Prop. & Cas. Ins. Co.* (D.Colo. Aug. 8, 2019, No. 19-cv-00767-KLM) 2019 U.S.Dist.LEXIS 133523, at *13-*18 [granting motion to disqualify counsel from taking or defending depositions "in furtherance of Rule 3.7's purpose," and rejecting asserted need for "separate factual inquiry" into likelihood of revelation at trial of dual role]; *Lowe v. Experian* (D. Kan. 2004) 328 F.Supp.2d 1122, 1127 (*Lowe*) [applying advocate-witness rule to disqualify counsel from participating in evidentiary hearings and in taking or defending depositions; "Depositions are routinely used at trial for impeachment purposes and to present testimony in lieu of live testimony when the witness is unavailable. Testimony from an oral deposition could not be easily read into evidence without revealing [counsel's] identity as the attorney taking or defending the deposition. Videotaped depositions present an even greater concern" (fn. omitted)].

In exercising its discretion to disqualify counsel under the advocate-witness rule, a court must consider: (1) ""whether counsel's testimony is, in fact, genuinely

14

needed"'"; (2) "the possibility [opposing] counsel is using the motion to disqualify for purely tactical reasons"; and (3) "the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case." (*Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 580-581 (*Smith*).)  "[T]rial judges must indicate on the record they have considered the appropriate factors and make specific findings of fact when weighing the conflicting interests involved in recusal motions." (*Id.* at 582.)  The court's exercise of discretion must be affirmed on appeal if there is any fairly debatable justification for it under the law. (See *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1124 (*McDermott*).)

### 2. *Analysis*

The trial court acted within its discretion in applying the advocate-witness rule to disqualify Lee from representing appellant at trial, in evidentiary hearings at which Lee is likely to testify, and in taking or defending depositions.  The court reasonably concluded that Lee is almost certain to be a key witness at trial, as the pleadings support reasonable inferences that the parties will seek Lee's testimony on some or all of the following topics:  (1) whether she was present with Yim or appellant at or near the time of any of the alleged acts of sexual abuse (potentially relevant to whether the acts occurred); (2) when

15

appellant first told Lee about the alleged sexual abuse (potentially relevant to appellant's implied allegation that her emotional distress was exacerbated by her efforts to remain silent about the abuse, and to Yim's anticipated defense, consistent with his assertion that Lee induced appellant to fabricate her claims after her divorce from Yim); (3) what appellant told Lee about the alleged sexual abuse (potentially relevant to the credibility of appellant's testimony regarding the abuse); (4) Lee's knowledge of appellant's claimed damages, including costs of medical and psychological care that Lee might have arranged or paid (potentially relevant not only to appellant's damages claims, but also to Yim's affirmative defense of failure to mitigate damages); and (5) the extent to which Lee invited and enabled Yim to establish a parental relationship (potentially relevant to appellant's causes of action premised on Yim's alleged fiduciary duty to her "as a parent and as a caregiver," and to her allegation that her efforts to remain silent were motivated by "fear of potentially breaking up her new family").

It was also reasonable for the court to conclude that Lee's dual role posed a risk of misleading the jury and prejudicing Yim, warranting disqualification regardless of appellant's consent. (See Rules Prof. Conduct, rule 3.7(a), com. 3; *Lyle*, *supra*, 122 Cal.App.3d at 482.) Lee's dual role posed the risk that the jury would be misled into accepting Lee's assertions during closing argument as evidence based on her personal knowledge as a witness. (See *Donaldson*,

16

*supra*, 93 Cal.App.4th at 929 ["'It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof'"].)  Such juror confusion could prejudice Yim.  For example, if Lee were to argue -- as she asserted in the opposition brief filed on appellant's behalf -- that Yim is a habitual liar, a juror might mistake this argument as evidence based on her extensive personal knowledge of Yim.  (See *Kennedy*, *supra*, 201 Cal.App.4th at 1200-1201, 1209 [trial court acted within its discretion in applying advocate-witness rule, among other considerations, to disqualify counsel from representing his son in dispute over custody of his grandson, where counsel was head of son's household and nearly certain to testify at trial regarding material factual disputes, including whether marijuana was smoked at home; risk of confusion at trial had been demonstrated in counsel's assertion during motion hearing that he prohibited smoking at home, as his assertion could be viewed as argument, testimony, or offer of proof concerning his son's testimony or his own].)  Such risks of factfinder confusion supported Lee's disqualification from representing appellant not only at trial, but also in (1) depositions; and (2) pretrial evidentiary hearings at which Lee is likely to testify.  (See, e.g., *Younger, supra*, 86 Cal.App.3d at 192-193; *Lowe, supra*, 328 F.Supp.2d at 1127; *Dunn v. Miceli* (D.Colo. Apr. 22, 2015, Civ. A. No. 14-cv-03068-MSK-NYW) 2015 U.S.Dist.LEXIS 52786, at *22-*25 [applying advocate-witness rule to disqualify counsel from representing his daughter "in any pretrial activity that could

17

be admissible at trial" in daughter's medical malpractice action, where counsel had long been active participant in daughter's medical care].)

Contrary to appellant's contention, the court's statement of decision reflected proper consideration of all factors germane to its discretion under the advocate-witness rule. First, as explained above, the court reasonably concluded that there was a "near certainty" Lee would testify.[4] (See *Smith, supra*, 60 Cal.App.4th at 581.) Second, in concluding that Lee's dual role would prejudice Yim, the court impliedly considered and rejected the possibility that Yim sought to disqualify Lee for purely tactical reasons. (See *ibid.*) Finally, in expressly accepting the undisputed evidence that appellant had consented to Lee's dual role, and explaining why it nevertheless deemed the informed-consent exception inapplicable due to the risk of prejudice to Yim and to the integrity of the judicial process, the court demonstrated it had considered appellant's interest in remaining represented by counsel of her choice. (See *id.* at 580.) Appellant did not assert this interest was heightened by any purported burden in retaining new counsel or in paying for duplication of Lee's efforts to date. (See *ibid.*) The court was not required to speculate on these matters on its own motion, particularly given that Yim moved to

---

[4]  Appellant did not dispute that Lee would testify; on the contrary, she conceded her informed written consent to Lee's dual role at trial was "required" under the advocate-witness rule.

disqualify Lee in the early stages of the litigation. Nor was the court required to make additional findings of fact, as the material facts before the court were effectively undisputed. (See *Hetos Investments, Ltd. v. Kurtin* (2003) 110 Cal.App.4th 36, 49-51 [rejecting appellant's contention that trial court violated *Smith*'s requirement to "'make specific findings of fact when weighing the conflicting interests,'" where there were no material factual disputes].)

In sum, in light of the near certainty that Lee will be a key witness at trial, Yim's interests and the integrity of the judicial process would likely be prejudiced were Lee permitted to participate as counsel at trial, in any evidentiary hearing at which she is likely to testify, or in taking or defending a deposition. Thus, notwithstanding appellant's consent to Lee's dual role, the trial court acted within its discretion in disqualifying Lee from representing appellant in those activities. We need not address whether the advocate-witness rule supported the court's additionally disqualifying Lee from representing appellant in all other pretrial activities, as we find an independent ground for that disqualification below.

### C. *Potential Misuse of Confidential Information*

Appellant contends no substantial evidence supported the trial court's finding that Lee had acquired confidential information through her 17-year marriage to Yim that she could use to appellant's advantage in litigating appellant's claims of sexual abuse during the marriage, and that the

court therefore abused its discretion in relying on that finding to extend her disqualification to all phases of the litigation.

### 1. *Principles*

"'The power [to disqualify counsel] is frequently exercised on a showing that disqualification is required under professional standards governing avoidance of . . . potential adverse use of confidential information.'" (*Jarvis, supra*, 33 Cal.App.5th at 129.) Even in the absence of an official standard on point, "counsel may be disqualified where counsel has obtained the secrets of an adverse party . . . because the situation implicates the attorney's ethical duty to maintain the integrity of the judicial process." (*Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 219.) The attorney's duty to uphold the integrity of the judicial process includes a more specific duty, in judicial proceedings, to honor obligations of confidentiality arising from nonlawyer confidential or fiduciary relationships. (See *O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1129 (*O'Gara Coach*) [affirming disqualification of company's former president and COO as counsel for former employees suing company, where counsel's potential advantageous use of confidential information obtained in his former nonlawyer capacity would violate his duty as attorney to maintain integrity of judicial process]; *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832-833 (*DCH*) [implying in dicta that because trial court found defense counsel's wife

20

"had received confidential information pertinent to the underlying action while she served on the [plaintiff] foundation's board," court would have had discretion to disqualify counsel had foundation sought disqualification and shown that counsel received confidential information from his wife]; cf. *In the Matter of Schooler* (Review Dept. 2016) 5 Cal. State Bar Ct. Rptr. 494, 502-504 (*Schooler*) [recommending that attorney be disbarred in part because her actions in nonlawyer capacity as trustee and executor of her parents' estate and trusts violated fiduciary duties under Probate Code, thereby violating ethical duty of all attorneys, codified at Bus. & Prof. Code, § 6068, to support state laws].)

A spouse has a privilege, even after the marriage ends, "to prevent another from disclosing" the contents of a communication made in confidence between the spouses during the marriage. (Evid. Code, § 980.) This privilege resembles privileges attendant to other confidential relationships. (See, e.g., Evid. Code, § 954 [client has privilege "to prevent another from disclosing" confidential attorney-client communication]; Imwinkelried, The New Wigmore, Evidentiary Privileges (3d. ed. 2016) § 6.3 ["For the most part, the [same] general rules . . . apply across the board to all absolute communications privileges," including spousal, attorney-client, clergy-penitent, and psychotherapist-patient communications privileges].) Communications between spouses during their marriage are presumed to be confidential. (Evid. Code, § 917, subd. (a) ["If a privilege is claimed on the ground that the matter sought

21

to be disclosed is a communication made in confidence in the course of the lawyer-client, . . . psychotherapist-patient, clergy-penitent, [or] marital . . . relationship, the communication is presumed to have been made in confidence"].) "[T]he opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential." (*Ibid.*; see also *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 420 [opponent has burden to rebut presumption that spousal communication is confidential by preponderance of evidence]; *Blau v. U.S.* (1951) 340 U.S. 332, 333-334 [reversing husband's criminal contempt conviction for refusing to disclose wife's whereabouts to grand jury and court, where husband's knowledge of wife's whereabouts was undisputedly based on marital communication and government made no effort to overcome presumption of confidentiality].)[5]

---

[5] Though the presumption of a spousal communication's confidentiality arises only on a showing of preliminary facts, those facts are limited to the making of the communication during the marital relationship. (See Imwinkelried, The New Wigmore, Evidentiary Privileges (3d ed. 2016) § 6.8 [in jurisdictions like California, that recognize rebuttable presumption of confidentiality for certain communications, "[t]he presumption arises when the alleged holder shows both that there was a communication and that the parties to the communication stood in a protected relationship such as spouses"]; cf. *Fish v. Superior Court* (2019) 42 Cal.App.5th 811, 818 ["'Once the claimant establishes the preliminary facts of a psychotherapist-patient relationship, the burden of proof shifts to the opponent of the privilege'"]; *Roman Catholic Archbishop of*
*(Fn. is continued on the next page.)*

## 2. *Analysis*

We have already concluded the trial court acted within its discretion in disqualifying Lee from representing appellant at trial and in certain pretrial activities. We now conclude the court acted within its discretion in disqualifying Lee with respect to all remaining activities throughout the litigation.

The undisputed fact of Lee's 17-year marriage to Yim, viewed in light of the pleadings and the unrebutted presumption that information obtained through spousal communications is confidential, was substantial evidence in support of the court's finding that Lee possessed confidential information she might use to appellant's advantage (and Yim's disadvantage) throughout the litigation. The court reasonably could infer that Lee obtained confidential information from Yim that she could use in drafting discovery requests and responses, preparing appellant and other witnesses for deposition, formulating deposition questions (even if disqualified from taking and defending depositions herself), and negotiating settlement, including information on: (1) Yim's whereabouts during each alleged act of abuse; (2) Yim's interactions with and feelings toward appellant over the years he allegedly functioned "as a parent and as a caregiver"; (3) Yim's relations with other

---

*Los Angeles v. Superior Court* (2005) 131 Cal.App.4th 417, 442 & fn. 12 [similar, regarding clergy-penitent communications privilege].)

prospective witnesses; and (4) Yim's finances.  (See *McDermott, supra,* 10 Cal.App.5th at 1122 [substantial evidence supported trial court's finding disqualification was necessary to prevent prejudice to opposing party from law firm's exploitation of privileged email's contents, where firm had formulated deposition questions based on email's contents and quoted email in depositions and interrogatory responses]; *Kennedy, supra,* 201 Cal.App.4th at 1200, 1205-1208 [affirming order disqualifying attorney and his firm from representing his son in dispute over custody of his grandson, in part based on firm's potential advantageous use of confidential information about opposing party and her household obtained through firm's prior representation of opposing party's father in divorce case].)  Obviously, Lee could not scrub such confidential information from her mind, or cordon it off from information obtained from other sources.  She was thus uniquely positioned to take advantage of confidential information to which she alone was privy, in violation of her duties to uphold the integrity of the judicial process and support state laws.  (See *O'Gara Coach, supra,* 30 Cal.App.5th at 1129; *DCH, supra,* 95 Cal.App.4th at 832-833; *Schooler, supra,* 5 Cal. State Bar Ct. Rptr. at 502-504.)

The disqualification order was a proper prophylactic measure.  There is no reason to suspect replacement counsel will attempt to solicit confidential information from Lee, in violation of that counsel's ethical obligations and Lee's duties of confidentiality.  (See *Addam v. Superior Court* (2004) 116 Cal.App.4th 368, 372 [courts should presume attorneys

behave ethically and honor duties of confidentiality].) Thus, replacement counsel will not be in a position to exploit such information. (See *McDermott*, *supra*, 10 Cal.App.5th at 1123-1125 [trial court acted within its discretion in disqualifying law firm that had used privileged email, notwithstanding court's separate order precluding further use of email or documents referencing it, in part because firm's attorney with personal knowledge of information contained in those documents had "greater capacity than any replacement counsel to exploit the information"].)

In sum, the trial court acted within its discretion in disqualifying Lee in all phases of this litigation as a prophylactic measure against prejudice to Yim and the integrity of the judicial process arising from Lee's dual role as an advocate-witness and her potential misuse of confidential information. The authority appellant herself identifies as the "most relatable" supports this conclusion. (See *Kennedy*, *supra*, 201 Cal.App.4th at 1200 ["A plethora of family entanglements, potential misuse of confidential information, a conflict posed by the near-certain prospect that counsel will have to testify, and the preservation of the integrity of the judicial system all coalesce to support the trial court's disqualification order"].) We see no basis for appellant's prediction that disqualification of her mother from representing her in litigation against her former stepfather and her mother's ex-husband over events occurring in the course of the marriage will "open the floodgate of abusive disqualification motions." (Cf. *People v.*

25

*Peoples* (1997) 51 Cal.App.4th 1592, 1594, 1598 [trial court acted within its discretion in disqualifying counsel on "unique" facts presented, where counsel "appeared on behalf of her brother, accused of assault with a deadly weapon, against her former husband and father of her children, who were themselves percipient witnesses to the altercation"].) We trust trial courts to detect -- and reject -- abuses of the advocate-witness rule and duties of confidentiality, particularly where the targeted attorney's personal relationships with the parties are not so close, or so closely related to the subject matter of the parties' dispute, as Lee's relationships with her ex-husband and his alleged victim.

**DISPOSITION**

The disqualification order is affirmed.  Yim is awarded his costs on appeal.

**CERTIFIED FOR PUBLICATION**


MANELLA, P. J.


We concur:



COLLINS, J.



CURREY, J.